Mr. John Theis, Commissioner of Policy Legal Department of Finance Administration c/o Mary Cameron, Staff Attorney P.O. Box 1272, Room 209 Little Rock, AR 72203-1272
Catherine M. Coker, Tax Auditor Supervisor Shana LaBouve, Tax Auditor Elaine Thornton, Tax Auditor Zanilla Young, Tax Auditor Laura Lady, Tax Auditor Ann Hoggard, Tax Auditor DFA Office of Field Audit Northeast Audit District P.O. Box 3073 Jonesboro, AR 72403-3073
Ladies and Gentlemen:
I am writing in response to your separate requests for my opinion regarding application of the Arkansas Freedom of Information Act ("FOIA"), A.C.A. 25-19-101 et seq, as amended by Act 1653 of 2001.[1]
You have submitted your requests pursuant to A.C.A. 25-19-105(c)(3)(B), which authorizes the custodian, requester, or subject of personnel or evaluation records to seek an opinion from the Attorney General. Mr. Theis, as Assistant Commissioner of Policy and Legal, Arkansas Department of Finance and Administration ("DFA"), is the custodian of your personnel files. The rest of you are employed by DFA's Office of Field Audit, Northeast Audit District. Each of you reports that a Mr. Claude Graves, who is apparently a former DFA employee, has requested your personnel records. Mr. Theis reports that the personnel files at issue contain the following: job applications and resumes; income tax records; payroll deduction information; personnel transactions such as promotions and demotions; records and memos relating to disciplinary actions; salary information; address changes; telephone numbers; social security numbers; performance evaluations; and medical and insurance records. For the sake of convenience, I will respond to all your requests in this single opinion.
The FOIA provides for the disclosure upon request of certain "public records," which are statutorily defined as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(1), as amended by Act 1653 of 2001. Given that you are all public employees, it would appear that your personnel files qualify as "public records" under this definition.
I have not been provided with copies of the records in question and therefore must limit myself to setting out the relevant tests for determining whether employment-related records are open to public inspection and copying, focusing particularly on the applicable legal analysis that Mr. Theis should undertake in making his decision regarding disclosure.
The disclosure of particular employee-related records depends in part upon whether they constitute "personnel records" or "employee evaluation or job performance records." The FOIA sets forth different standards for the disclosure of the two types of records. Because the requested documents, depending upon their individual nature, could be classified either as "personnel records" or as "employee evaluation or job performance records," I will discuss the standards applicable to both categories.
Job Performance Records
Records reflecting disciplinary actions — even disciplinary actions other than suspension or termination — are properly classified as "employee evaluation or job performance records" within the meaning of the FOIA.See Ark. Ops. Att'y Gen. Nos. 99-412; 97-222; 95-351; 94-306; 93-055. I have consistently opined that records which detail an employee's performance or lack of performance with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. Id.
Under the provisions of the FOIA, "employee evaluation or job performance records" are disclosable only if the following conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
Determining whether the requested records meet the above-listed conditions will entail a factual inquiry I am neither authorized nor equipped to conduct. None of you has indicated in your requests whether you have been suspended or terminated, much less whether any final administrative resolution of any such action has occurred. Moreover, without actually reviewing the documents at issue, I will be unable to determine whether they formed a basis for any decision to suspend or terminate you. Finally, without actually reviewing the documents, I will be likewise unable to determine whether a compelling public interest exists in their disclosure.
The phrase "compelling public interest" is not defined in the FOIA. Clearly, whether there is a "compelling public interest" in the release of particular records can only be determined by considering the factual context of the particular case. However, Professor John Watkins, the leading commentator on the FOIA, has provided some guidelines for determining whether such an interest exists. He states: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest. . . .' The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." WATKINS, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press 2d ed. 1994) at 135. In this regard, Professor Watkins also states: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present."Id. at 137. Professor Watkins has also noted that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists.Id. at 136 (noting that "[a]s a practical matter, courts may be more likely to find such an interest when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.").
PERSONNEL RECORDS
Under the provisions of the FOIA, "personnel records" are subject to inspection and photocopying except to the extent that disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12).
Neither the FOIA nor the judiciary has defined the term "personnel records." However, Professor Watkins offers some guidelines. He suggests that the records normally maintained in personnel files be considered a starting point. Such records, Professor Watkins points out, include applications for employment, resumes, grade transcripts, payroll-related documents (including information as to reclassifications, promotions, or demotions), transfer records, health and life insurance forms, performance evaluations and ratings, letters of recommendation, complaints, requests for leave without pay, certificates for advanced education or training programs, and legal documents (such as garnishment orders and subpoenas). WATKINS, supra at 125-26. As noted above, Professor Watkins considers these personnel file records as merely a starting point, and he notes that the language of the FOIA is broad enough to encompass other records pertaining to personnel. He specifically recommends, for example, that materials such as interview notes, records showing annual leave and sick leave, equal employment opportunity grievance files, workers' compensation documents, and medical records, although not included in personnel files, also be considered personnel records. (I should note that some of the records mentioned above may be subject to specific exemptions set forth in other sections of the FOIA, including the previously discussed exception for certain employee evaluation and job performance records.)
The FOIA further does not define the phrase "clearly unwarranted invasion of personal privacy." The Arkansas Supreme Court, however, has construed the phrase and adopted a balancing test:
 The fact that section 25-19-105(b)(10) [changed to A.C.A. § 25-19-105(b)(12) by Act 1653 of 2001] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings but allowed release of the records of the examination with the names deleted. The court relied upon federal case law that finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidates' lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidates' names deleted.
Other federal case law illustrates further types of information whose release might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: Personal histories, religious affiliations of employees, Church of Scientology v. Department ofDefense, 611 F.2d 738 (9th Cir. 1979); citizenship, United StatesDepartment of State v. Washington Post Co., 456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980); social security numbers, Swisher v. Dept. of the Air Force, 660 F.2d 369 (5th Cir. 1981); information about family life, Providence Journal Co. v. F.B.I.,460 F. Supp. 778, reversed on other grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption, Rural Housing Alliance v.Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, dates and places of birth, salaries of public employees, training or education background, and work experience. Kruzonv. Department of Health Human Services, 649 F.2d 65 (1st Cir. 1981);Simpson v. Vance, 648 F.2d 10 (D.C. Cir. 1980).
The fact that the subject of the records may consider release of the records an unwarranted invasion of personal privacy is not relevant to the analysis. See Ops. Att'y Gen. 94-198, 94-178 and 93-055; WATKINS,supra at 126.
The foregoing test is to be used in determining whether the records that have been requested are subject to disclosure (or are exempt from disclosure) as "personnel records." As discussed above, the only records (or portions of records) that may be shielded are those whose release would give rise to a "clearly unwarranted invasion of personal privacy" or which are exempted by some other specific exception, such as the exemption for medical records or the exemption for "employee evaluation or job performance records" discussed above. The exempt portions should be excised and the remainder made available for inspection and copying.
In addition to the qualified exemptions for employee evaluation or job performance and personnel records discussed above, the FOIA exempts the following records that might bear on your request:
(1) State income tax records;
 (2) Medical records, adoption records, and education records as defined in the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232q, unless their disclosure is consistent with the provisions of the Family Educational Rights and Privacy Act of 1974.
* * *
 (13) Home addresses of non-elected state employees contained in employer records, except the custodian of the records shall verify an employee's city or county of residence or address on record upon request.
A.C.A. § 25-19-105(b), as amended by Acts 1336 and 1653 of 2001. With respect to the former of these exemptions, as I noted in Ark. Op. Att'y Gen. No. 99-327:
 If the records in question in fact contain . . . state income tax withholding information, § 25-19-105(b)(1) will likely apply to prevent disclosure. See generally Op. Att'y Gen. 91-093. The mere fact that the files contain information pertaining to . . . income or other financial information is not, however, a sufficient basis for concluding that this exemption applies.
The custodian should review your records and redact any information that qualifies for the above or any of various other exemptions. For example, if the record contains social security numbers, they should be redacted.See Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 552a (the "Federal Privacy Act"). Similarly, unlisted telephone numbers should be redacted.See Ark. Op. Att'y Gen. No. 99-054. In addition, under certain specialized circumstances where the facts indicate that a particular individual has a heightened privacy interest, the home address and listed telephone number can be redacted as well. See Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998); Ark. Op. Att'y Gen. No. 99-054. In addition, the home addresses of non-elected state employees have recently been made exempt from disclosure pursuant to A.C.A. § 25-19-105(b)(13).
In Ark. Op. Att'y Gen. No. 2001-028, I offered the following guidance to a custodian regarding the just referenced privacy interest:
 The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
 If you, as custodian of the records, determine factually that the concern you have expressed meets the three prongs of test laid out by the McCambridge court, you must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in their non-disclosure. Again, this determination will be a factual one, based upon the information available to the custodian.
The foregoing sets forth the general standard the custodian should apply in determining what records or portions of records are subject to disclosure. Based on these guidelines, I offer the following opinions regarding the categories of information Mr. Theis reports are contained in the records:
 Job applications and resumes. In my opinion, these should be disclosed, subject to the condition that exempt information of the sort discussed above should be redacted.
 Income tax records. As noted above, state income tax records are exempt from disclosure pursuant to A.C.A. § 25-10-105(b).
 Payroll deduction information. This office has repeatedly opined that to release payroll deduction information would amount to a clearly unwarranted invasion of privacy, as would the release of any record containing intimate financial details. See Ark. Ops. Att'y Gen. Nos. 98-173; 98-126; 95-242; 94-235; 91-093; and 87-422.
 Personnel transactions such as promotions and demotions. As noted above, employee evaluations or job performance records are subject to disclosure only there has been a final administrative resolution of any suspension or termination proceeding, the records in question formed a basis for the decision made in the proceeding to suspend or terminate the employee, an there is a compelling public interest in the disclosure of the records. I gather that none of the employees whose files Mr. Graves has requested has been suspended or terminated. If so, the records at issue would appear to be exempt from disclosure.
 However, one can and must distinguish between employee evaluations and job performance records, on the one hand, and personnel records that merely note the fact of promotion or demotion, on the other. As I stated in Ark. Op. Att'y Gen. No. 2000-224:
 Although my predecessor has previously opined that promotion records can constitute "employee evaluation/job performance records" if they detail the performance of an individual on the job (see, e.g., Op. Att'y Gen. No. 97-081), it has also been the opinion of this office that the names, dates, and positions to which the individual is promoted can be released. See Op. Att'y. Gen. 99-016. If your promotion records reflect only this type of releasable information, I would not classify them as "employee evaluation/job performance records." They can therefore be released, as the disclosure of such information does not constitute a "clearly unwarranted invasion of personal privacy". . . .
 The custodian will need to determine whether the record contains any such releasable information.
 Records and memos relating to disciplinary actions. As I noted in Ark. Op. Att'y Gen. No. 2000-257:
 [T]his office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g.,
Ops. Att'y Gen. Nos. 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
 As discussed above, given the nature of such records, if a disciplinary action resulted in a final administrative resolution of a suspension or dismissal, records that formed a basis for the decision made in the proceeding to suspend or terminate the employee will be subject to disclosure if there is a compelling public interest in making the records available. See Ark. Op. Att'y Gen. No. 2000-232 ("[I]f there has been no finally resolved suspension or termination, records relating to "disciplinary actions" and "reprimands" remain confidential and nondisclosable.").
 Finally, I invite you to review the following self-explanatory passage from Opinion No. 2000-232:
 I should note that your request for "all disciplinary actions, reprimands, etc." is sufficiently broad that it might be classified as requesting both "employee evaluation/job performance records" and "personnel records," although the focus appears to be on the former. If your request is exclusively for documents relating to investigations into employee misconduct, the requested documents most likely constitute "employee evaluation/job performance records" rather than" personnel records." See Ops. Att'y Gen. Nos. 98-001; 96-342; 96-257.
 Salary information. As my immediate predecessor stated in Ark. Op. Att'y Gen. No. 98-126:
 [S]alary information is clearly subject to disclosure, as such information does not constitute a "clearly unwarranted invasion of personal privacy." See Ops. Att'y Gen. 96-205, 95-242, 95-070, and 94-198. This office, however, has also opined that documents related to insurance coverage, tax withholding, and payroll deductions (as well as similar records that would divulge intimate financial details) should be excised from otherwise releasable documents. See Ops. Att'y Gen. 95-242, 94-235, 91-093, and 87-422. Accordingly, such information, including" total deductions" and "net pay," should be excised. . . .
 Mr. Theis will need to determine if any information should be excised pursuant to this standard.
 Address changes. As noted above, the home addresses of non-elected state employees have recently been made exempt from disclosure pursuant to A.C.A. § 25-19-105(b)(13). Since the subjects of the requests are all state-employed tax auditors, this information should not be disclosed.
 Telephone numbers. As noted above, unlisted telephone numbers should be redacted, as should the number of any person having a heightened privacy interest because of special circumstances. See Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998); Ark. Op. Att'y Gen. No. 99-054.
 Social security numbers. As noted above, social security number should be redacted. See Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 552a (the "Federal Privacy Act").
 Performance evaluations. I believe such information is subject to disclosure only if it meets the three conditions set forth in my preceding discussion of employee evaluations and job performance records. If, as appears to be the case, none of the employees has been suspended or terminated, evaluations should not be produced.
 Medical records. Medical records are expressly exempted from disclosure pursuant to A.C.A. § 25-19-105(b).
 Insurance records. In my opinion, insurance records are exempt from disclosure on privacy grounds. Accord Ark. Ops. Att'y Gen. Nos. 2000-129; 95-110 and 87-442.
Finally, I should respond to the effort of one of you to couple your request for my opinion with an FOIA request seeking access to Mr. Graves' personnel file. Any such request should be made not to this office, but rather to the custodian of Mr. Graves' file, who is presumably Mr. Theis. See A.C.A. § 25-19-105(a)(2)(A).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Act 1653 became effective on April 16, 2001.